Gregory N. Hoole (7894)
Ruth Hackford-Peer (15049)
HOOLE & KING, L.C.
4276 South Highland Drive
Salt Lake City, UT 84124
801-272-7556
gregh@hooleking.com
Ruthhp@hooleking.com
*Attorneys for Town of Leeds*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, SOUTHERN DIVISION

| | |
|---|---|
| DORIS MCNALLY and DANIELLE STIRLING<br><br>    Plaintiffs,<br><br>v.<br><br>TOWN OF LEEDS; WILLIAM HOSTER; and TROI GEE HOSTER<br><br>    Defendants. | **DEFENDANT TOWN OF LEEDS' MOTION TO DISMISS**<br><br>  Case No: 4:26-cv-00045-PK<br>  Magistrate Judge Paul Kohler |

Pursuant to Rule 12(b)(6) of the Federal Rules of Criminal Procedure, Defendant Town of

Leeds ("Leeds" or "Town") moves to dismiss Plaintiffs Doris McNally and Danielle Stirling's

("Plaintiffs") Complaint against the Town.

RELIEF REQUESTED

The Complaint alleges three causes of action against the Town, and all under 42 U.S.C.

§ 1983, as follows: (1) First Amendment Retaliation; (2) 14th Amendment Due Process; and (3)

Equal Protection/Religious Discrimination. To hold the Town liable for § 1983 claims under

*Monell*, Plaintiffs must demonstrate (1) a municipal policy or custom – either an official rule or

one so entrenched in practice as to constitute an official policy"; " (2) that the municipality was

deliberately indifferent to constitutional violations that were the obvious consequence of its policy"; and "(3) that the policy directly caused [Plaintiffs] constitutional injury." *Coones v. Bd. of Cnty. Commissioners of Unified Gov't of Wyandotte Cnty./Kansas City, Kansas*, No. 22-2447-JAR, 2026 WL 878441, at \*13 (D. Kan. Mar. 31, 2026). The custom or policy must be ratified by policymakers, not merely acquiesced to. *See e.g. Dempsey v. City of Baldwin*, 143 Fed. Appx. 976 \*8 (10th Cir. 2005) (unpublished). Plaintiffs' complaint against Leeds should be dismissed because (1) Plaintiff has not pled plausible facts against Leeds to establish *Monell* liability, (2) Plaintiffs have not sufficiently pled a policy or custom (3) Deliberate Indifference is not Properly Pled, and (4) Mayor Hoster is not a final policymaker under Utah law.

BACKGROUND[1]

Plaintiffs' Complaint is a travelogue of grievances related to the alleged actions of Defendant William Hoster, the Town's mayor.  (Compl. (ECF No. 1) *passim*.)  But the Complaint's allegations specific to the Town of Leeds are spartan.  Across 37 pages of material, 109 separately numbered paragraphs, and 27 exhibits, the Complaint references the Town only a handful of times.

**A.  Factual Allegations Against the Town**

The first reference is in paragraph 3—the description of parties section—which alleges, correctly, that "Defendant Town of Leeds, (Leeds) is a municipality and governmental sub-division of the State of Utah, located in Washington County."  (Compl. ¶ 3.)  Paragraph 3 asserts

---

[1]    Under the 12(b)(6) standard, the Court accepts only well-pleaded facts as true, not conclusory allegations or legal conclusions.  *See Franco v. The Church of Jesus Christ of Latter-day Saints*, 2001 UT 25, ¶ 26, 21 P.3d 198 ("The sufficiency of [a plaintiff's] pleadings 'must be determined by the facts pleaded rather than the conclusions stated'") (citation omitted)).  Consistent with that 12(b)(6) standard, we accept the well-pleaded facts as true and recite the well-pleaded allegations in a light most favorable to Plaintiffs.

a legal conclusion that Leeds "is a proper defendant under 42 U.S.C. § 1983 and cites *Monell* without factual support[2]. *(Id.)*  The next reference is specific to the delivery of a notice of claim. (Comp. ¶ 8.)

The Complaint goes on to detail at length the actions and conduct that Plaintiffs allege were undertaken by Defendant Hoster and Hoster's wife.  (Compl. *passim*.)  But it does not again reference the Town, or the Town's actions or conduct, in any meaningful way.  (Compl. *passim*.)  After the lengthy allegations against Hoster, the Complaint asserts three causes of action against the Town.

## B.  The Causes of Action Against the Town

The three causes of action against the Town are constitutional and they seek damages through 42 U.S.C. § 1983. The first cause of action, First Amendment Retaliation, alleges that Hoster retaliated against and violated Plaintiffs' free speech rights under the First Amendment to the U.S. Constitution (Compl. ¶¶ 66-69). Plaintiffs allege that "Mayor Hoster responded with a sustained campaign of adverse actions" and then detailed ten different actions that Mayor Hoster took. (Compl. ¶ 68(a)-(j)). But there is no reference to the Town or the Town's conduct under this cause of action. (Compl. ¶¶ 66-69).

The second cause of action is for an alleged Due Process violation under the Fourteenth Amendment and is based on lack of notice and an opportunity to be heard. (Compl. ¶¶ 70-74). Plaintiffs allege that Mayor Hoster accused Plaintiff Stirling of violating the law without affording Plaintiff Stirling a chance to be heard or correct the public record. (*Id*.). Again, there is no reference to the Town under this cause of action. (Compl. ¶¶ 70-74).

---

[2]    The Court does not accept these legal conclusions under the Rule 12(b)(6) standard. *See Kirkham v. Widdison*, 2019 UT App 97, ¶ 22, 447 P.3d 89.

Finally, Plaintiffs allege an Equal Protection/Religious Discrimination cause of action against the Town for religious discrimination. (Compl. ¶¶ 75-80). Here, Plaintiffs allege that "Plaintiff Stirling, as an LDS member who publicly defended non-LDS inclusion in town politics, was targeted by Mayor Hoster in direct response to her religiously-motivated advocacy." (Compl. ¶ 76). Moreover, Plaintiffs' allege that "Mayor Hoster intentionally treated Plaintiff McNally differently from similarly situated LDS candidates based on her non-LDS religious status." But, again, there is no reference to the Town under this cause of action.

<u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. Of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In assessing a motion to dismiss under Rule 12(b)(6), this Court must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (cleaned up). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; accord *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). When pleading *Monell* liability, a policy or custom "is not a fact that can be baldly asserted at the pleading stage…but, rather, must plead facts that, if true, would give rise to a plausible inference that such a policy exists." *Ward v. City of Hobbs*, 398 F. Supp. 3d 991, 1039 (D.N.M. 2019).

## ARGUMENT

### I.   The Complaint Fails To State A Claim Against the Town

While there is not a heightened pleading requirement, the pleading standards may have "greater bite" in the context of a § 1983 claim therefore, it is "particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what to whom*…." *Kansas Penn Gaming, LLC v Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1201 (10th Cir. 2003) (cleaned up).

To establish municipal liability under § 1983, a plaintiff must show "1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Galindo v. Taylor*, 723 F.Supp.3d 1008, 1022 (D. Kan. 2024) (citing *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010). "The expectation is that the plaintiff must tell the Court at the outset, in the complaint, (i) why he or she thinks a policy [or custom] exists—alleging specific facts; and (ii) what he or she thinks the policy is. The Court will then decide whether (i) plausibly suggests (ii)." *Griego v. City of Albuquerque,* 100 F. Supp. 3d 1192, 1216 (D.N.M. 2015). "The plaintiff must tell the Court, however, what he or she has, or else the Court will disregard the alleged policy as a naked conclusion." *Id.*

### A.   Plaintiff has not sufficiently alleged a policy or custom

In the Tenth Circuit, establishing *Monell* liability based on a municipal custom requires Plaintiffs to demonstrate "an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to

constitute a custom or usage with the force of law[.]" *Waller v. City and Cnty of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019). After establishing a municipal custom, Plaintiffs must demonstrate "a direct causal link between the policy or custom and the injury alleged." *Id.* "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). This requires more than conclusory assertions or recitation of elements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It requires the complaint to identify and describe the specific policy or custom by alleging "'specific facts.'" *Hardy v. McGaha*, No. 2:25-cv-00203, 2025 U.S. Dist. LEXIS 276078, at *12 (D. Utah June 27, 2025) (quoting *Henderson v. Harris County*, 51 F.4th 125, 130 (5th Cir. Oct. 12, 2022)). Put simply, "if such a policy exists, [the plaintiff] must plead precise details about it." *Id.*

Here, the term "policy" appears only one time in the Complaint, when detailing that Mr. Bosserman stated the purpose of his letter was to guide internal policy. (Compl. ¶ 50). The term "custom" also appears only one time in the Complaint, when Plaintiffs allege that "[t]he Town Council maintained a well-settled custom of permitting Mayor Hoster to act unilaterally without oversight, established well before the October 2025 defamation." (Compl. ¶ 61). But the Town is not implicated in the defamation cause of action at all. (Compl. ¶¶ 89-99 (defamation claims asserted against Hoster and his wife individually). Factual details regarding any alleged policy or custom are even more scarce than the words themselves. (Compl. *Passim*). In short, even viewing the allegations in the light most favorable to Plaintiffs, the Complaint fails to allege a

policy or custom required to state a valid § 1983 claim against the Town. The first, second, and third causes of action should be dismissed against Leeds.

B. *Plaintiffs have not alleged ratification which is required for Monell liability*

Even if an amorphous "custom" were sufficiently pled outside of the defamation claim (one is not), Plaintiffs plead only that the Mayor was allowed to act unilaterally, showing acquiescence, when actual ratification is required to support *Monell* liability. *See Dempsey v. City of Baldwin City, Kan.,* 333 F.Supp.2d 1055, 1071 (D. Kan. 2004) aff'd sub nom. *Dempsey v. City of Baldwin*, 143 F. App'x 976 (10th Cir. 2005). For a municipality to be liable under § 1983 through ratification, the "plaintiffs must allege more than mere acquiescence by a final policymaker in a subordinate's actions." *Id.* Plaintiffs must allege facts sufficient to prove that the final policymaker affirmatively "approve[d] a subordinate's decision and the basis for it," before ratification is sufficient to be chargeable to the municipality. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). General allegations about "the City" or its "representatives" failing to act are insufficient to establish *Monell* liability. *See Erickson v. City of Lakewood, Colorado*, 489 F. Supp. 3d 1192, 1207 (D. Colo. 2020).

In *Dempsey*, several policy officers sued the city under § 1983 alleging the city retaliated against them after they reported misconduct by another officer and were retaliated against with shift changes, demotions, negative evaluations, and even suspensions and terminations. *Id.* at 1062-63, 1067-1068. The Court determined that the City Council retained final authority over discipline actions, not the mayor, so the city itself could not be liable under § 1983. *Id.* at 1071 ("Thus, an official whose actions can be reviewed by other policymakers or who is constrained by the policies of others does not have final policymaking authority."). The Court further

determine the City Council conducted meaningful review, and there was no evidence of ratification by the City Council. *Id.* at 1071.

Here, unlike in *Dempsey*, there are simply no facts alleged for the court to know what kind of meaningful review, if any, the City Council conducted. Moreover, Plaintiffs have attached myriad exhibits to the Complaint but do not attach Town rules, a Town Charter, nor the Municipal Code nor Municipal Ordinances. They simply start with the conclusion that the Town is responsible for the Mayor.

### C. No Constitutional Deprivation is alleged

Not all adverse treatment rises to the constitutional level. In the First Amendment retaliation realm, the test is whether the action "would deter a reasonable person from exercising his First Amendment rights." *Sinfuego v. Curry Cnty. Bd. of Cnty. Commissioners*, 360 F. Supp. 3d 1177, 1229-30 (D.N.M. 2018). Courts apply the same standard for equal protection claims. *See Hunt v. Central Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1185 (D.N.M. 2013). The Supreme Court has held that deprivations less harsh than dismissal can "sometimes qualify as an 'adverse action'" but "no one would think that a mere frown from a supervisor constitutes a sufficiently adverse action." *Houston Cmty. Coll. Sys. v. Wilson,* 595 U.S. 468, 477 (2022). Courts must weed out "only inconsequential actions." *McCormick v. City of Lawrence, Kansas*, 253 F. Supp. 2d 1172, 1196 (D. Kan. 2003) (affirmed).

In *Hunt,* the Court held that actions such as denial of leave requests, small salary deductions, and issuance of counseling memoranda do not constitute adverse employment actions. *Hunt v. Cent. Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1187 (D.N.M. 2013). Similarly, the *Littlefield* Court held that the complaint contained no allegations that the offending party knew Dr. Littlefield's religion, and therefore failed to allege that defendant retaliated based on

religious association. *Littlefield v. Weld Cnty. Sch. Dist.,* No. 22-CV-02241-PAB-KAS, 2023 WL 6962087, at *9 (D. Colo. Oct. 19, 2023).

Here Plaintiffs Complaint identifies numerous "adverse actions" by the Mayor – dissolving a committee, curtailing a monthly report to the Town Council, excluding Plaintiff McNally from a meet the candidates event, publishing an attack on a Facebook page, commissioning, reading, and posting a legal memo critical of a plaintiff, publishing statements criticizing McNally, excluding Plaintiffs from Town communications, and threatening legal action. (Compl. ¶ 68(a)-(j)). But Plaintiffs do not allege that the Mayor was even aware of the religion of the Plaintiffs. And if the Mayor was aware, how he became aware of such status. Moreover, the actions alleged are not the kind of adverse actions that constitute a constitutional deprivation. *See Hunt,* 951 F. Supp. 2d at 1187. These are not actions that would deter a reasonable person from engaging in constitutionally protected speech. *See Sinfuego,* 360 F. Supp. 3d at 1229. These actions are akin to a "mere frown" and not sufficiently adverse to rise to a constitutional deprivation. *See Houston Cmty. Coll. Sys.,* 595 U.S. at 477.

## II.     Plaintiffs fail to Plead Facts Sufficient to Support Deliberate Indifference

The deliberate indifference standard is stringent, requiring proof that a municipal actor disregarded a known or obvious consequence of their action. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Id.* Moreover, courts generally require a pattern of similar constitutional violations before imposing *Monell* liability. *Thao v. Grady Cnty. Just. Auth.,* 159 F.4th 1214, 1231 (10th Cir. 2025).

Here, Plaintiffs have not adequately pled the stringent standard of deliberate indifference. They allege that the Council "repeatedly failed to intervene" as Mayor Hoster terminated the Town Clerk, authorized a road expenditure without Council authorization, donated money without Council Authorization, assumed control of the Town Facebook page, dissolved a committee, and removed monthly reports from the Council agenda. (Compl. ¶ 61). These are not facts sufficient to establish that the Town has notice that its "consciously or deliberately chooses to disregard the risk of harm." *See Waller*, 932 F.3d at 1284. Failure to intervene on these facts does not establish deliberate indifference required to support *Monell* liability.

### III.    Mayor Hoster Does Not Have Final Policymaking Authority As a Matter of Law.

Whether an individual is a final policymaker for purposes of § 1983 liability is a legal issue determined by the court based on state and local law. *Meyer v. Nava*, 518 F. Supp. 2d 1279, 1287 (D. Kan. 2007). The question of who is a "final policymaker" capable of creating municipal liability is a legal question to be determined by the Court. *Moreland Props., LLC v. City of Thornton*, 559 F. Supp. 2d 1133, 1152, (D. Colo. 2008). Courts must look to applicable state and local law to determine where policymaking authority lies, and "a federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Milligan-Hitt v. Bd. of Trs. of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1224 (10th Cir. 2008).

Here, Plaintiffs allege that the Mayor Hoster has final policymaking authority. (Compl. ¶ 60 ("Mayor Hoster was the Town's chief executive officer and final policymaker for the instruments of municipal authority. His final, unreviewable authority over the Town's public communications, engagement of outside legal counsel, and conduct of Town Council meetings made his action on those matters the actions of the municipality itself.")). Plaintiffs do not

consider (nor plead) whether the Mayor's discretionary decisions are constrained by general policies enacted by others or whether those decisions are reviewable by others. *See e.g. Pintar v. Houck*, 263 P.3d 1158, 1163 (Utah 2011).[3]

Under Utah municipal law, whether the mayor or city council is the final policymaker depends on the form of government adopted by the municipality and the specific functions at issue. In municipalities operating under a council-mayor form of government, Utah law establishes a separation of powers between the legislative branch (city council) and the executive branch (mayor) with each serving as the final policymaker within their respective spheres of authority. Utah Code Annotated § 10-3b-201. Under this structure, the city council serves as the legislative body with policymaking authority, not the mayor. *Council of Holladay City v. Larkin*, 89 P.3d 164 (Utah 2004). The mayor, as chief executive, has the power to "execute the policies adopted by the Council." *Martindale v. Anderson*, 581 P.2d 1022, 1026 (Utah 1978). All that Plaintiffs have pled regarding the municipal structure of the town is that "it was governed by a mayor and a four-member Town Council." (Compl. ¶ 9). Given the existence of a Town Council, Plaintiff must plead additional facts about the involvement of the Town Council before the legal conclusion that the Mayor is the final policymaker can be accepted as true. *See Dempsey v. City of Baldwin*, 143 F.App'x 976, 990 (10th Cir. 2005) ("[W]e agree with the district court that the City Council is the final policymaker for the City's personnel actions….").

---

[3]    Courts apply a test to determine final policymaker status: (1) whether the official is meaningfully constrained by policies not of that official's own making; (2) whether the official's decision is final and subject to meaningful review; and (3) whether the policy decision is within the realm of the official's grant of authority. *See Langford v. Grady Cnty. Det. Ctr.,* 670 F. Supp. 2d 1213, 1240 (W.D. Okla. 2009). The Supreme Court has emphasized that "only those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability." *St. Louis v. Praprotnik*, 485 U.S. 112, 123. (1988).

Plaintiffs have failed to establish that Mayor Hoster possesses final policymaking authority. Utah municipal law suggests that Mayor Hoster does not possess final policymaking authority and that authority is either shared by the Town Council or the Town Council has final policymaking authority over legislative and policy matters. In any case, without additional factual and legal support, the Court cannot accept as true the legal conclusion that Mayor Hoster possesses final policymaking authority here. Thus, this is a separate legal basis for Plaintiffs causes of action against the Town to be dismissed.

## CONCLUSION

Plaintiffs bring § 1983 causes of action for First Amendment Retaliation, Due Process violations, and Equal Protection/Religious Discrimination against the Town of Leeds. But municipalities cannot be held liable under respondeat superior principles. Instead, Plaintiffs must plead that the constitutional violation resulted from an official policy, custom, or practice of the municipality itself. Plaintiffs have not pled the existence of a municipal policy or custom, nor have they pled a causal link between that policy and Plaintiffs' injuries. Finally, there are no well-pled facts that the municipality acted with deliberate indifference nor facts from which the Court can conclude that Mayer Hoster possessed final policymaking authority sufficient to establish *Monell* liability. The first, second, and third causes of action against the Town of Leeds should be dismissed in their entirety.

HOOLE & KING, L.C.

*/s/Ruth Hackford-Peer*
Ruth Hackford-Peer
Attorney for Town of Leeds