Amanda M. Hansen (17227)
Nathaniel F. McKean (17273)
BEAR Law Group
532 N Colorado St, Salt Lake City, UT 84116
(801) 448-6167
bearlawgroup@outlook.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH SOUTHERN DIVISION

| | |
|---|---|
| DORIS MCNALLY and DANIELLE STIRLING,<br><br>        Plaintiffs,<br><br>vs.<br><br>TOWN OF LEEDS, a Utah municipality; WILLIAM HOSTER, individually; and TROI GEE HOSTER, individually,<br><br>        Defendants. | **PLAINTIFFS' OPPOSITION TO DEFENDANT TOWN OF LEEDS' MOTION TO DISMISS**<br><br>Case No. 4:26-cv-00045-PK<br><br>Magistrate Judge Paul Kohler |

## INTRODUCTION

The Town of Leeds asks this Court to dismiss claims against it on the ground that the Complaint fails to plead (1) sufficient facts; (2) municipal custom; (3) deliberate indifference; and (4) that Mayor Hoster is the Town's final policymaker under Utah law. The motion should be denied.

## LEGAL STANDARD

Under Rule 12(b)(6), a motion to dismiss may only be granted if the complaint does not plead sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The Court must accept the complaint's well-pleaded factual allegations as

McNally v. Leeds et al., Opposition to Town's Motion to Dismiss

true and view them in the light most favorable to the plaintiff. *Schrock v. Wyeth, Inc.,* 727 F.3d 1273, 1280 (10th Cir. 2013). Plausibility only requires enough factual content to permit a reasonable inference of liability; it does not require certainty or evidentiary detail. *Iqbal,* 556 U.S. at 678.

In the § 1983 context, the complaint must make clear who is alleged to have done what to whom, but there is no heightened pleading standard beyond *Iqbal*. *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011).

## **ARGUMENT**

**Municipal liability is direct, and a municipality acts through its policymakers and customs; the Complaint's focus on Mayor Hoster is how that claim is pleaded, not a flaw in it:**

Municipal liability under Section 1983 is direct, not vicarious. A municipality is not liable for its officials' acts on a theory of respondeat superior. It is liable for its own policies and customs, which it can act on only through its officials. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95 (1978). The Tenth Circuit recognizes several ways to plead a municipal policy or custom, including an informal custom, a decision by an official with final policymaking authority, ratification by a final policymaker, or a failure to train or supervise resulting from deliberate indifference. *Waller v. City & Cnty. Of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019). Plaintiffs need not prevail on every pathway at the pleading stage; they need only plead facts supporting a plausible route to municipal liability.

The Town's first argument is that the Complaint reads as "a travelogue of grievances" about Mayor Hoster and mentions the Town only "a handful of times." (MTD at 3-4.) Even if

2

McNally v. Leeds et al., Opposition to Town's Motion to Dismiss

true, it is beside the point. A municipality does not act in the first person. It acts through its policymakers and its customs. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A complaint that pleads municipal liability will speak mostly of the officials through whom the municipality acted. How many times the Town appears by name measures nothing.

The Complaint supplies the attribution Monell requires. It alleges that Mayor Hoster was the Town's final policymaker over the functions he used against Plaintiffs. (Compl. ¶ 60.) It alleges a Council custom of inaction in the face of his documented pattern. (Compl. ¶¶ 61-64.) Those allegations tie the conduct to the Town. The arguments below establish each.

The Town's reliance on Kansas Penn and Robbins is misplaced. Those cases require a complaint to "make clear exactly who is alleged to have done what to whom" where multiple defendants are lumped together as an undifferentiated group, so that no defendant is left guessing at the claim against it. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011); *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008). This Complaint does the opposite. It names Mayor Hoster and specifies what he did, when, and through which instrument of his office. No defendant is left guessing. The Town's objection is not that the conduct is unclear. It is that the conduct belongs to Hoster, not the Town. That is the attribution question Monell answers, and the Complaint answers it through paragraphs 60 and 61.

## I. <u>Municipal Custom</u> is adequately pleaded in the Complaint by the Town Council's documented deliberate inaction toward Mayor Hoster's abuse of office:

To establish that an informal practice constitutes a municipal custom, the plaintiff must plead a practice "so permanent and well settled as to constitute a custom or usage with the force of law." *Waller v. City & Cnty. Of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019). A custom is ordinarily shown through a pattern of similar conduct, and it must be the "moving force" behind the violation. *Id.* At 1284; *Hinkle v. Beckham Cnty. Bd. Of Cnty. Comm'rs*, 962 F.3d 1204, 1212

3

McNally v. Leeds et al., Opposition to Town's Motion to Dismiss

(10th Cir. 2020).

The Town does not address the prior incidents of Mayor Hoster's abuse of office alleged in the Complaint. They establish that his conduct toward Plaintiffs was not isolated.

The Complaint identifies three specific incidents of Mayor Hoster openly abusing the power of his office to attack his critics. He initiated criminal charges against former Councilwoman Lori Hunsaker after she corroborated a citizen's accusation against him, and personally pressed the County Attorney to prosecute; those charges were later dismissed. (Compl. ¶ 11.) He terminated Town Clerk Michelle Rutherford without the Council approval the statute required, contested her unemployment benefits and lost, and brought two felony charges against her; both were dismissed. (Compl. ¶ 12.) And he responded to citizen Daniel Brown's criticism of him at a public Council meeting by dispatching the Washington County Sheriff's Office to Brown's home, with deputies conveying that Hoster "still reserved the right to pursue charges." (Compl. ¶ 13.)

Each incident predated the matters brought by Plaintiffs. Each followed the same constitutional template: a critic spoke or opposed Mayor Hoster, and he responded by invoking governmental authority against that critic. The instrument changed, criminal charges, employment authority, law enforcement threats, and then Town-funded counsel, but the retaliatory use of official power was the same. That is the recurring pattern of similar conduct from which a custom is drawn.

Council knowledge here is not inferred from rumor. The pleaded pattern occurred at Council meetings, involved Council approval authority, or unfolded through the Council's own proceedings, so the Council's notice is grounded in the very setting where municipal oversight occurs. Its silence across multiple incidents, over multiple years, at its own proceedings,

4

McNally v. Leeds et al., Opposition to Town's Motion to Dismiss

plausibly establishes a practice "so permanent and well settled" as to carry the force of law. This was not an aberration. It was, as the Complaint alleges, simply how things operated in Leeds. (Compl. ¶ 14.).

The Town argues the Complaint's custom allegation is limited to defamation. (MTD at 6.) It is not. Paragraph 61 uses the phrase "established well before the October 2025 defamation" as a temporal anchor, not a definitional limit.

## II. **Deliberate Indifference** is adequately pleaded in the Complaint under the standard from *Waller*; the Town's motion answers a different theory:

The Complaint pleads deliberate indifference. The Town's motion does not answer it. A municipality is liable under Monell when it has notice that its failure to act is substantially certain to result in a constitutional violation and consciously disregards that risk. *Waller v. City & Cnty. Of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019). The Council had notice. It made the choice.

The Town argues ratification. That theory requires a final policymaker to approve both a subordinate's decision and the basis for it. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Plaintiffs need not rely on it. To the extent discovery later shows affirmative Council approval of both the memo and its basis, that would be an additional Monell route, not a prerequisite to the claims pleaded here. The Complaint independently pleads custom and deliberate indifference. The question is not whether the Council approved Mayor Hoster's conduct. It is whether the Council had notice of the risk and disregarded it. The Town never reaches that question.

The notice is the pattern set out in Argument I. It is a pattern of the same kind. Three times before the conduct here, the Council watched Mayor Hoster turn the power of his office

5

McNally v. Leeds et al., Opposition to Town's Motion to Dismiss

against a critic. He initiated criminal charges against former Councilwoman Hunsaker after she corroborated a citizen's accusation against him. (Compl. ¶ 11.) He terminated Town Clerk Rutherford without the Council approval the statute required, contested her benefits, and charged her with two felonies. Each was dismissed. (Compl. ¶ 12.) He summoned the Sheriff to Daniel Brown's home after Brown criticized him at a public meeting. (Compl. ¶ 13.) Same template each time. Each happened at or through the Council's own proceedings. (Compl. ¶ 14.) That is the "pattern of similar constitutional violations" the Town says is absent. It is pled.

The Council's silence was a choice, not an inability. This Council functioned. It debated measures, tabled them, and adopted and amended its own agendas, including amendments moved from the floor. When it wished to exercise oversight, it did. On matters that touched the Mayor's interests, it did not. The Complaint explains why.

Councilman Furley served as Deputy Fire Chief of the Hurricane Valley Fire Special Service District. Mayor Hoster chaired that District's board. Under the District's employment manual, the board chairman holds authority over employee discipline and termination appeals. (Compl. ¶¶ 18-20.) Furley's livelihood was subject to the Mayor's authority. He voted with the Mayor on every contested matter, including the vote to table Plaintiff Stirling's audit request after he had helped prepare it. (Compl. ¶¶ 20, 64.) Councilman Cundick served as the Mayor's ally. At the Mayor's direction, he canceled a citizen candidate forum. (Compl. ¶ 64.) With Furley beholden and Cundick aligned, the Mayor held a controlling majority of the five-member body. When his interests were at stake, the Council reliably declined to act. At this stage, these allegations are taken as true.

Then came October 8. Town-funded counsel read aloud a memorandum accusing Plaintiffs of criminal conduct. The accusation was nowhere on the agenda the Council had

6

McNally v. Leeds et al., Opposition to Town's Motion to Dismiss

adopted for that meeting. Plaintiff Stirling was absent, in northern Utah at the side of her dying mother-in-law. She had no notice. The Council sat present and said nothing. It did not correct the record. It did not place the matter where Stirling could answer it. (Compl. ¶¶ 42-44.) October 8 was not the first notice event. It was the culmination. By then the Council had already observed the prior retaliatory pattern, and its failure to correct the accusation, give Stirling a forum to respond, or stop the Town's continued use of the memo allowed the injury to continue and deepen. A Council that adopts and amends its own agendas could have noticed this accusation, corrected it, or declined to host it. It did none of those things.

A policymaking body with notice of a three-time pattern, in control of its own proceedings, watched its mayor do the same through Town-funded counsel and adjourned without a word. That is conscious disregard of a known risk. That disregard was the moving force behind the violations alleged. *Hinkle v. Beckham Cnty. Bd. Of Cnty. Comm'rs*, 962 F.3d 1204, 1212 (10th Cir. 2020). The Complaint pleads deliberate indifference. The Town answers a claim the Complaint does not make.

### III. The Complaint pleads adverse action sufficient for First Amendment retaliation; the conduct is not 'akin to a mere frown':

The Town argues the adverse actions alleged are "akin to a 'mere frown'" under *Houston Community College System v. Wilson*, 595 U.S. 468, 477 (2022). The comparison fails.

First, the Supreme Court's "mere frown" language marked the lower boundary of actionable conduct in a narrow context: a censure resolution adopted by a governing body against one of its own members for his conduct. This case is not that. The accusations here were not a peer censure. They were criminal accusations leveled through Town-funded counsel and official Town channels, at a private citizen and candidate, McNally, and at a sitting

7

councilmember, Stirling, who was not present and had no notice. And they were made in the weeks before the November 2025 Town Council election, in which Mrs. Troi Hoster was McNally's opponent.

Second, the test for First Amendment retaliation is whether the defendant's action "would chill a person of ordinary firmness from continuing to engage" in the protected activity. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000); *see also Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). The standard is objective, and it reaches retaliation outside the employment context. *Van Deelen v. Johnson*, 497 F.3d 1151, 1156-57 (10th Cir. 2007). Paragraph 68(a)-(j) of the Complaint enumerates ten adverse actions, including: public criminal accusations at a Town meeting falsely presented as the conclusions of an independent investigation; a draft privileged legal document posted on a public bulletin board alongside partisan campaign material; continued publication on the official Town platform after a Cease-and-Desist; and exclusion of both Plaintiffs from internal communications necessary to perform their official duties. Individually or cumulatively, these actions would deter a person of ordinary firmness from seeking public office, requesting a financial audit, or publicly criticizing religious exclusion in town governance.

Third, as to Equal Protection, the Town argues Mayor Hoster did not know Plaintiffs' religious affiliations. Discriminatory intent need not be pleaded with direct proof. It may be shown circumstantially, and an invidious purpose may be inferred from the totality of the facts. *Ashaheed v. Currington*, 7 F.4th 1236, 1250-51 (10th Cir. 2021); *see also SECSYS, LLC v. Vigil*, 666 F.3d 678, 686-87 (10th Cir. 2012). At Rule 12, the question is whether the pleaded facts allow a reasonable inference of discriminatory treatment, not whether Plaintiffs already possess direct proof of the Mayor's state of mind. The Complaint pleads that he did. Mayor Hoster and

8

McNally v. Leeds et al., Opposition to Town's Motion to Dismiss

his wife jointly organized a "Meet the Candidates" event at the Leeds Second Ward Bishop's home. Only LDS candidates were invited. Plaintiff McNally, who is not LDS, was not. (Compl. ¶ 26.) Mrs. Hoster served as Relief Society President of that ward. (*Id.*) Plaintiffs do not premise municipal liability on the Bishop's private hosting. The Town-linked conduct is Mayor Hoster's use of official Town communication channels to promote the event, and the custom and final-policymaker theories explain why that official use is attributable to Leeds. The Complaint alleges McNally was excluded based on her non-LDS status. (Compl. ¶ 77.) Plaintiffs do not premise municipal liability on the Bishop's private hosting. The Town-linked conduct is Mayor Hoster's use of official Town communication channels to promote an event from which non-LDS candidates were excluded, and the custom and final-policymaker theories explain why that official use is attributable to Leeds. One does not exclude a candidate for being non-LDS without knowing she is non-LDS. The Town's reliance on *Littlefield*, where the complaint alleged no knowledge of the plaintiff's religion, is misplaced. Knowledge is in any event a fact question, inappropriate to resolve on a Rule 12 motion.

### IV.    <u>Final Policymaker</u> status is a legal question the Court need not resolve, because either outcome leaves the Town liable; and the Town's argument rests on a form of government Leeds does not have:

Whether a municipal official holds final policymaking authority is a legal question for the Court, decided by reference to state and local law. *Milligan-Hitt v. Bd. Of Trs. Of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1224 (10th Cir. 2008). The Court need not resolve final-policymaker status, because the custom and deliberate-indifference theories independently state a claim. If it does reach the question, the Town is wrong.

The Town faults the Complaint for not attaching "Town rules, a Town Charter, nor the

McNally v. Leeds et al., Opposition to Town's Motion to Dismiss

Municipal Code nor Municipal Ordinances." (MTD at 8.) Plaintiffs were not required to attach them. Final policymaking authority is fixed by municipal law, and the Town's ordinances are local law the Court may consider in deciding it. *See Milligan-Hitt*, 523 F.3d at 1226-27 & n.4. The Court may also take judicial notice of the Town's adopted budget, a public record whose existence and contents are not subject to reasonable dispute. Fed. R. Evid. 201(b). Plaintiffs request that the Court consider these records, attached as Exhibits A through C. They establish the opposite of what the Town argues. Plaintiffs do not use these records to amend the Complaint. Paragraph 60 already pleads that Mayor Hoster was the final policymaker for the municipal instruments he used. The ordinances are the local law the Court must consult to decide that pleaded legal question, and they also answer the Town's own assertion that Leeds operates under the council-mayor form.

The Town invokes the council-mayor form under Utah Code section 10-3b-201, under which, it says, the council makes policy and the mayor executes it. (MTD at 11.) Leeds does not operate under that form. The Town enacted both Ordinance 2009-16 and Ordinance 2010-03 "in compliance with Utah Code Annotated section 10-3b-403," the operative provision of the five-member council form. (Ex. A; Ex. B.) *Martindale* and *Larkin* describe a different form. They do not govern here.

The relevant function is narrow enough to decide this motion: at minimum, the direction and use of the Town's outside legal counsel, one of the functions paragraph 60 expressly pleads. The Complaint also pleads the Mayor's final authority over public communications and Council-meeting conduct, and the Town's motion fails if Plaintiffs plausibly plead final authority over any function through which the injury was inflicted. Under the five-member council form, the mayor is the Town's chief executive officer. Utah Code § 10-3b-104(1)(a). The Town Council

10

McNally v. Leeds et al., Opposition to Town's Motion to Dismiss

then exercised its authority under section 10-3b-403(1)(b)(iii) and delegated the Town's executive and administrative functions to a Town Manager. (Ord. 2009-16, Ex. A.) That delegation gave the manager authority to "represent the Town in its negotiations and working relationships with" "all providers of professional services to the Town and other vendors." (Ord. 2009-16 § 1(d), Ex. A.)

The Town's ordinances placed that authority in the Mayor's hands when the Town Manager position was vacant. Under Ordinance 2010-03, whenever the Town Manager position is vacant, the Mayor "shall assume the duties and responsibilities as Acting Town Manager until the position of Town Manager may be filled." (Ord. 2010-03 § 4, Ex. B.) During the period at issue, the Town had no Town Manager. Its adopted budget for fiscal year 2024-2025 funds the offices the Town staffs: an administrative clerk, code enforcement, bookkeeping, roads and parks, and professional services including legal, engineering, and audit. (Resolution 2024-03, Ex. C.) It funds no Town Manager. Those duties fell to the Mayor, and the authority to direct the Town's professional-service providers, including its standing outside counsel, was his. That mayor was William Hoster. This is not a claim that every administrative contact with a vendor creates municipal policy. The point is narrower. During the Town Manager vacancy, the ordinances placed final policymaking authority for the Town's professional-service relationships in the Mayor, and the Town identifies no municipal law giving any other officer meaningful review or reversal authority over his direction of counsel.

A single deliberate decision by the official who holds final authority over the relevant function is itself an act of the municipality. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). No separate showing of custom, prior pattern, or deliberate indifference is required. The decision itself is the policy. *Id.*; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

11

McNally v. Leeds et al., Opposition to Town's Motion to Dismiss

Pembaur applies only where the official held final policymaking authority over the relevant function, which is why the function-specific inquiry controls. Here the function is the Mayor's direction of Town counsel, and the Town's ordinances plausibly place that final executive authority in him during the Town Manager vacancy. Mayor Hoster directed the Town's standing outside counsel to prepare the BTJD memo and to present it. He supplied the facts the firm worked from, and he supplied them alone. (Compl. ¶¶ 39, 50.) That direction exercised a function the Town's own ordinances committed to him. It was the Town's act.

The Town says a mayor only executes policy. Not here. There is no superior policy for the Acting Town Manager to carry out in directing the Town's counsel, and no officer above him to review what he directs. The ordinance imposes a general duty to report to the Council. A duty to report is not a power to review or reverse a specific direction of counsel, and the Town identifies none. *Dempsey* is not to the contrary: it concerned personnel decisions the council retained authority to review, not a function the Town's ordinances committed to the Mayor. His authority is final in the only sense Monell requires: final within the function in which he acted. *Praprotnik*, 485 U.S. at 123-27.

The budget's legal line does not change this. The Council funds the existence of Town counsel. It does not choose how that counsel is used in a given matter. Mayor Hoster made that choice, and he made it alone. The Council did not make that specific direction of counsel; Mayor Hoster did. Paying for work already done is not authorizing it. Funding counsel is not directing it.

The motion fails whichever way the Court resolves the policymaker question. If Mayor Hoster held final authority over the direction of Town counsel, his act is the Town's act. If the Council retained that authority, the claim proceeds on the custom and deliberate-indifference

12

McNally v. Leeds et al., Opposition to Town's Motion to Dismiss

theory set out above, because the Council's sustained inaction is the moving force behind the violations alleged. *See* Arguments I-II, *supra*. Either path leads to the Town.

The Town's final argument rests on a form of government the Town does not have. It leaves the custom theory untouched. The motion should be denied.

## CONCLUSION

The Complaint pleads a municipal custom built from prior incidents of the same kind as the violations here, each known to the Council and met with silence. It pleads a Council that exercised oversight when it chose to and declined to when the Mayor's interests were at stake, with a Mayor-aligned majority controlling the room. It pleads deliberate inaction at an official proceeding where the conduct occurred and the Council sat present. And the Town's own ordinances plausibly establish that Mayor Hoster held final authority over the function he used against Plaintiffs. The adverse actions alleged are not inconsequential. The Motion to Dismiss should be denied.

Respectfully submitted,

DATED this 17th Day of June, 2026.

BEAR Law Group

/s/ Amanda M. Hansen                              /s/ Nathaniel F. McKean
Amanda M. Hansen (17227)                          Nathaniel F. McKean (17273)

*Attorneys for Plaintiff*

13

McNally v. Leeds et al., Opposition to Town's Motion to Dismiss

## INDEX OF EXHIBITS

Plaintiffs' Opposition to Defendant Town of Leeds' Motion to Dismiss McNally v. Town of Leeds, No. 4:26-cv-00045-PK (D. Utah)

**Exhibit Description**

| | |
|---|---|
| A | Leeds Town Ordinance 2009-16 (adopting the five-member council form under Utah Code § 10-3b-403 and delegating executive and administrative functions, including authority over professional-service providers, to a Town Manager) |
| B | Leeds Town Ordinance 2010-03 (providing that the Mayor assumes the Town Manager's responsibilities as Acting Town Manager when that position is vacant) |
| C | Leeds Town Resolution 2024-03 (adopted budget funding legal, engineering, and audit services and funding no Town Manager position) |

14

McNally v. Leeds et al., Opposition to Town's Motion to Dismiss

## CERTIFICATE OF SERVICE

I certify that on June 17, 2026, I served a copy of the foregoing document via electronic

filing to the following:

Gregory N. Hoole (7894)
Ruth Hackford-Peer (15049)
HOOLE & KING, L.C.
4276 S Highland Drive
Salt Lake City, UT 84124
801-272-7556
gregh@hooleking.com
ruthhp@hooleking.com
Attorneys for Town of Leeds


MATTHEW D. CHURCH
MADELYN JACOBSEN
MANNING CURTIS BRADSHAW & BEDNAR PLLC
201 South Main Street, Suite 750
Salt Lake City, Utah 84111
(801) 363-5678
mchurch@mc2b.com
mjacobsen@mc2b.com
Attorneys for William Hoster


Brady Brammer (13411)
Matthew C. Piccolo (15707)
MacRorie Hewitt (20240)
BRAMMER RANCK, LLP
3300 N. Triumph Blvd., Suite 100
Lehi, Utah 84043
Tel: (385) 746-1201
bbrammer@brfirm.com
mpiccolo@brfirm.com
mhewitt@brfirm.com
*Attorneys for Defendant Troi Gee Hoster*

BEAR Law Group

*/s/ Amanda M. Hansen*
Amanda M. Hansen

15